JUNE, 1824.

Tankersley
v.
Silburn.

---

## Wm. Lee *against* Allen Adkins.

*June*, 1824.

IN *Dallas* Circuit Court, *Lee* declared in Debt against *Adkins* in the usual form on a writing obligatory, of which the following is a copy as endorsed on the Writ :

"$150. Six months after date I will pay *John Baird* or "order one hundred and fifty dollars for value received of "him this 15th of *November*, 1820.

" ALLEN ADKINS. (Sealed.)"

1, A writing with<br>a scroll annexed,<br>and the word<br>"seal" therein<br>written, but hav-<br>ing no expres-<br>sion in the body<br>of the instrument<br>denoting that it is<br>sealed, is not a<br>sealed instru-<br>ment.<br>2, But defendant<br>cannot resort to<br>the endorsement<br>of the Writ to<br>shew the vari-<br>ance.

Special demurrer—1st cause, Declaration purports to be founded on a writing obligatory under seal, the instrument set forth in the endorsement of the Writ is not a sealed instrument. 2d, There is a variance between the Writ and declaration. Joinder in demurrer. Judgment for defendant, from which *Lee* appealed to this Court, and assigned as Error, that the Circuit Court sustained the demurrer.

The case being considered as settling a principle important in practice, the Court gave notice that they would hear the arguments of any of the gentlemen of the bar who might think proper to offer them.

*Gordon*, Counsel for plaintiff in Error.—According to the modern doctrine it is not the impression on wax or any other substance, but the intention of the parties as to be collected from the instrument, which gives it the character and dignity of a deed. 1 Hay. 198. Jac. L. D. Deed, II. 6. 3 Bac. Ab. 694. 2 Coke, 5 a. 2 Stra. 814. 1 Dallas, 63. 2 Cain, 362. 5 John. 242. The word, *seal*, written within the scroll clearly shews the intention of the party to make it his deed.

The Court below could not resort to the endorsement, or notice the variance between the declaration and instrument without over. Whatever may be the determination on the

JUNE, 1824.

Wm. Lee
v.
Allen Adkins.

first point, this Court must adjudge for us on this.   2 Wash.
212.   3 Cra. 498.   1 Hay. 150.   2 Wilson, 395, 95.   2
Whea. 45.   Douglas, 227.   1 Saund. 327.(*a*)

*Clay* on the same side.—Whether this be a deed or not
depends solely on the rule of construction as to the inten-
tion of the parties.   Written or ink seals have long been
recognized in most of the States of the Union as of equal
validity with an impression on wax.   In some of the States
it has been enacted that a scroll shall be considered as a seal ;
in others where (as well as I can ascertain) there is no such
Statute, the general practice of the country and the judicial
decisions have given to them the same validity.   1 Dal. 3,
4.   1 Hay. 193.   1 Wash. 43.

It is the seal and not the clause in *Cujus Rei testimonium*
which renders the instrument a deed.   2 Coke, 5, Goddard's
Case.   Co. L. 7 a.   1 Dyer, 19 a.   1 Mun. 490.   1 Wash.
170.   2 Cain, 362.

Does policy, or any sound principle of jurisprudence, re-
quire the distinction which was made by the judgment
of the Court below ?   If a seal either of ink or wax ap-
pears, it is presumed to have been affixed by the obligor.
1 Hay. 200.   Sealed and unsealed instruments in this State
are in most of the effects on the parties to be charged the
same ; forgery of the one is punishable to the same extent
as the other.

*Hutchinson,* for appellee.—At the present day at least, the
object of the seal is to give greater dignity to the instrument,
and not, as in times when writing was little used, to establish
the identity of the person.   5 Johnson, 243.   How is the
intention of the party to make it a sealed instrument to be
ascertained ?   It is a question of construction to be deter-
mined, like other questions of this sort, from the face of the
instrument.   An impression on wax or other substance
would, on common law principles, establish it as such.
Since this mode of sealing has gone into disuse, a scroll,
with a clear intention of the party to make it his seal,
would give to the ink seal adopted the validity which he in-
tended.   But this intention must surely be expressed, and is
not to be inferred from the mere use of the scroll.   He
may adopt the scroll as his seal, but not being a seal, the par-
ty must make it one by a distinct expression to that effect.
The case cited by Mr. *Clay,* from 1 Wash. 43, proves this.
The case from 1 Wash. 170, appears to have gone off on
another point.   But there it appears to have been Judge
*Pendleton's* opinion that the scrolls, without expressing in

the body of the instrument that it was sealed, were not to be considered as seals. From principle and authority it appears clear that the mere annexation of the scroll, without intent to make it a deed, or in other words, it not distinctly appearing from the instrument that it was intended as a deed, does not make it such. 1. Mun. 490. 4 Mun. 442. 5 Esp. 82.

*JUNE, 1824.*

Wm. Lee
v.
Allen Adkins.

*Coalter*, for appellee.—The decision of this Court as to what should constitute a seal, whether for appellant or appellee, cannot prejudice the rights of future suitors; but it is important that the distinction should be so laid down by the highest tribunal in the State, that pleaders may know how to declare on instruments of the same description as that sued on here. I shall not controvert but that an ink is as good as a waxen seal; it is the intention of the party which in either case gives the character to the instrument. This intention would be clearly manifested by making an impression on it with a *seal.* The intention would be equally clear by expressing in the body of the instrument that it was sealed or attested by the seal of the obligor. Does this intention appear where the instrument is not sealed by an impression made, and where the party in the body of it does not express or recite that it is attested by his seal, or where he may exclude this idea by the expression " *witness my hand ?*" To common apprehension and reason it would seem not, nor do the authorities cited on the other side establish a different conclusion. The case from Haywood's Reports is but an *obiter dictum*, and so is the case from Coke's Reports. In the case from Dyer the opinion of the Court is stated so concisely that nothing satisfactory can be gathered from it. So Co. L. 7 a, merely states the practice and its progressive variations as to charters and deeds. But there is no established custom here, for Judges and Lawyers differ. Sealed and unsealed instruments differ in at least one important particular. In an action on an unsealed instrument, the consideration may be impeached under the general issue. In an action on a sealed instrument it must be impeached by special plea. The two cases cited from Washington's Reports conflict.

He also cited 5 Esp. Rep. 83. 1 Mun. 490. 4 Hen. and Mun. 442.

*Taylor*, for the appellee.—We admit that an impression on wax or wafer is not requisite to constitute a seal, but the instrument can surely have no other character or dignity than the party making intended; he is to make his con-

JUNE, 1824.

Wm. Lee
v.
Allen Adkins.

tract, a contract is not to be made for him by construction. If in the body of the instrument he says that he annexes his seal, and has annexed even a scroll or ink seal to his signature, there can be no doubt of his intention. In his own words it appears that he adopts the scroll as his seal. Is such intention fairly to be inferred merely from the scroll, and in the absence of any indication of the party's intention to make it his seal? By actually sealing, or saying in the writing that he seals, he is induced to reflect on the character and extent of his obligation. But if we consider the mere scroll as a seal, the solemnity of the instrument is destroyed. How easy would it be for the obligee or holder, almost without hazard of detection, to annex the scroll and give to the instrument a character and dignity not intended by the maker. In the cases cited by Judge *Clay*, the absence of the clause, *in Cujus rei testimonium*, is not noted. We may fairly infer that it was contained in the several instruments referred to in these cases, and that the points decided do not conflict with the principle for which we contend. The English decisions cited all appear to rest on the solitary case in Dyer. The concluding part of Mr. *Clay's* argument supports our position; for to attain certainty as to what constitutes a seal, the decision of the Court on this point must, it would seem, be for us.

*Hitchcock*, in reply.—The gentlemen for the appellees in admitting the validity of an ink seal admit all that we contend for. By what we may call the common law of the several States of this Union, a scroll or ink seal is as much  a seal as the impression of the coat of arms of the maker on wax, according to the mode of sealing in former times when the bargainor or obligor often could not write. The scroll or ink seal must be viewed by the Court prima facie as a seal. Whether it was the intention of the party to make it such, or whether it were fraudulently annexed, would, on a proper issue, be a question for the determination of a Jury on evidence. The question here submitted rests upon principle rather than authority. In *England* the Courts look at the seal rather than the body of the instrument, although in modern times the signature is considered necessary there as well as here.(*a*)   The sole question here is as to the means of ascertaining the intention of the party. The sound policy of jurisprudence evidently supports the construction for which we contend. Ink seals have been in general use here since the settlement of the country. Of the private obligations, official bonds, &c. of the country, scarcely one can be found with seals on wax or wafer according to the old forms. If the Court determine that

(*a*) 2 *Bl. Com.* 306.

this is not a sealed instrument, what must be the effect of the decision on the many bonds of executors, administrators, guardians, and public officers throughout the State which may be as informal as this ? As for Mr. *Taylor's* apprehension of the facilities for the fraudulent alteration of the instrument, should our construction be recognized as the law,—What is there in the act of attaching to a signature a piece of wax or wafer with an impression more difficult to execute or easy to detect than an ink seal ? To me it seems that the scroll (particularly with the word, " seal," therein written as in the present case) would be more difficult to counterfeit; and from the character of the hand-writing afford much better means of detection than an impression made on the paper.

Judge *Lipscomb* delivered the opinion of a majority of the Court.

On the first point in this case a wide difference of opinion has prevailed among professional men. It cannot, however, be of much importance in which way it is settled ; for as soon as the decision shall be known the practice can readily be adapted to it. Waiving the enquiry as to the origin and former uses of seals, it is sufficient for our present purpose to say that the English authorities inform us, 3 Co. Inst. 169, that a seal is an impression made on wax or some other adhesive substance, which, when affixed to an instrument of writing, made it a deed. It was most frequently used to make a deed of feoffment, and was of such importance that proof of the seal was sufficient without proving the hand-writing. The seal made the instrument a deed though not subscribed at all by the party sealing. The obligation created by the deed could be dissolved only by an instrument of equal dignity and solemnity. The great respect shewn to deeds is said to be founded in much good sense, for they carry with them evidence that they result from reflection and sufficient deliberation. The process of preparing and affixing the seal affords time for the maker of the deed to consider the extent and consequences of the obligation he is about to enter into. The usual conclusion of a deed was *In Cujus rei testimonium ;* but these or other words of like import were of no avail without the solemnity (and we might add the deliberate act) of affixing a seal. It has been said, that, if sealed, the instrument is a deed, although the clause of *In Cujus rei testimonium* be omitted. But we find that wherever it has been so ruled it was in reference to deeds containing words shewing the intention of the parties to make them deeds without the aid of the usual conclu-

sion. 1 Dyer, 19. In some part of the body of the deed, if not in the conclusion, was some expression of intention to make a deed, and affixing the seal was only the consummation of such intention. But if it were admitted that no particular words were necessary, and that the seal alone made the instrument a deed, the reason for this old rule of construction no longer exists. Seals at that day were formed of a distinct substance and proof *per se* on inspection; and the question whether the seal was intended for a seal or not could not then arise. The ancient mode of sealing is no longer in use. By common consent other signs have been substituted. Ink seals or scrolls are now in almost universal use. These modern substitutes cannot prove themselves by inspection; they are all alike, or so nearly so, as to preclude the appropriation of an ink seal of a particular and distinctive model or appearance to each individual: hence it becomes necessary to resort to the body of the instrument to ascertain the intention of the party making it. How would it be possible now, as when seals, each having its peculiar impression, were used, to prove the seal? Could any subscribing witness say whether the instrument had the scroll affixed at the time of its execution? Judge *Haywood,* speaking of modern seals, says that they are so much of the essence of a deed that they must first be proved, and that proof of the seal is proof of the deed; yet, in the same case, when opposed by the difficulty of proving an ink seal or scroll, he says, " you must prove the hand-writing of the obligor, and that will be sufficient proof of the deed." One of the learned Counsel for the appellant admitted that the scroll proved nothing of itself, but contended that the word, " seal," evinced the intention of the party to make a deed; but if the scroll can prove nothing per se, we must not look to it, but to the body of the instrument to ascertain the intention. If when wax seals were in use it was necessary that the intention to make a deed should be expressed either in the clause of attestation or somewhere in the body of the deed a *fortiori,* it is necessary when the scroll is used instead of the wax seal. This view of the subject is supported by the deliberate opinion of Judges *Tucker, Roane,* and *Fleming,* with a strong intimation of concurrence on the part of Judge *Pendleton.* If a doctrine different from that in which the majority of the Court agree in this case were recognized, I fear that a door would be opened for fraud and perjury, and for imposing on the unwary, instruments as deeds which they intended as simple contracts. Those who are disposed to go still deeper into crime might add the scroll after instruments had been executed and delivered. What defence would meet such a case? If *non est factum*

JUNE, 1824.

Wm. Lee
v.
Allen Adkins.

were plead, the witness, who might prove the hand-writing of the subscriber, would know nothing about the scroll, and a recovery might be had on a paper which had been forged.

It is said, that if it be determined that the paper here sued on is not a specialty, many indulgent creditors may be barred by the principle and the Statute of limitations ; but we think that such considerations should have no influence on us ; and if they had, it might well be urged on the other hand that many promissory notes, long since satisfied, and negligently left in the hands of the payees, would make their appearance in the garb of specialties long after all evidence of payment has been lost or forgotten. If the scroll had been added years after making the promissory note, how could the forgery be detected ? These mischiefs will be prevented by requiring that the party shall express in the body of the instrument the intention to make a deed, and consummate that intention by the addition of a scroll ; if such intention be expressed, any scroll, however whimsically fashioned, would be the seal of the party who on the face of the instrument had declared it such. It is the opinion of the majority of the Court, that the instrument under consideration is not a deed, and the judgment would be affirmed ; but, on the second point relied on by the appellant, we consider that advantage of the variance could not properly be taken without oyer, and that for this reason the demurrer should have been overruled.

Judge *Crenshaw*.—The main question for consideration, in this case is, whether an instrument of writing with a scroll annexed to the signature and the word, "seal," written within the scroll, is a deed or writing obligatory.

This question has excited much interest, and it is important to the practice and to the rights of individuals that it be settled in some way or other. It is conceded on all hands that the instrument must be considered a deed if there were any expressions on its face shewing the intention of the parties to make it a deed. A deed is said to be an instrument of writing expressive of a contract, and sealed and delivered by the party to be charged ; it is now settled as the better opinion that the formal parts of a deed, as described by the ancient law writers, are not essential to its validity ; it is sufficient if it be a writing sealed and delivered, though there are no words in its face expressly shewing the intention of the parties to make a deed ; the seal was originally composed of wax or some other tenacious substance susceptible of an impression ; and I presume, according to the English decisions, that no other substance

25

JUNE, 1824.

Wm. Lee
v.
Allen Adkins.

could be substituted. But the almost immemorial usage of most of the States of the Union, sanctioned in some of them by judicial decisions, in others by Statute, has established an ink seal or scroll as a sufficient substitute for wax. The waxen seal, as other principles of the common law, derived its authority from general consent and usuage without any legislative act. I see no good reason why general consent and usage should not give equal validity to an ink seal, the use of which is more convenient than wax; the seal was intended to give a solemnity and deliberation to the execution of the instrument. I cannot discover more solemnity and deliberation in affixing a seal of wax or wafer than in making a scroll and writing in it the word, "seal." By this latter mode the party clearly shews his intention to make a deed, and to dispense with the more formal mode of sealing with wax; he substitutes one ceremony for another; nor do I conceive it material whether his intention appears in the body of the instrument, in the conclusion, or in the seal itself, provided such intention is manifest on the face of the instrument. The word "seal," or "L. S." (the meaning of which initials is well understood) written within the scroll, to my mind, and I believe to the mind of every common understanding, as clearly expresses the intention of the party to make a sealed instrument as if the word "deed," or "indenture," had been used in the beginning of it, or the words, "witness my hand and seal," in the conclusion. If, for general convenience, and by general consent and usage, ink has been adopted instead of wax, one sign employed instead of another, to express the same idea and indicate the same solemnity, I cannot think it competent for this Court by its adjudication to declare the general practice unmeaning and unavailing. Such a judicial decision must, in my opinion, tend to open a torrent of mischief on society to discharge most of our public officers and their securities from their bonds, (for many of them have heen executed with no more ceremony than the instrument now under consideration, and I doubt whether any are sealed with wax or wafers) and to destroy private rights ten years sooner than the parties intended or expected at the time of making their contracts. Until I conceive such decision required by principles of law clear as the beams of light I cannot assent to it. As regards contracts hereafter to be made, it is not material which way it is settled; they may be adapted to the law as settled here.

It is said that by giving to instruments like the present the character of a deed, the door would be opened to frauds and perjuries. Is there, I would ask, any greater facility in

JUNE, 1824.

Wm. Lee
v.
Allen Adkins.

counterfeiting a scroll than affixing a bit of wax or wafer after the signature has been made ? A cunning hand, prompted by a depraved heart, might commit forgery in either case ; but to my apprehension the difference in the colour of the ink of the scroll from that of the instrument and signature would afford a clue to the detection of forgery, which a seal of wax or wafer does not. As to perjury, a witness could as well recollect one kind of seal as the other ; but it is said that the scroll, coming after the signature of the party, is not to be considered as a part of the instrument, and we must look for some expression preceding the signature to ascertain the intention. This argument proves too much : a wax or wafer seal comes after the signature, and by the force of this argument every specialty with such seal, and without preceding words expressing the intention to make a deed, would be reduced to the grade of a simple contract. I admit that what may be written upon a scroll is no part of the instrument ; but what is written in the scroll is as much a part as the scroll itself. My conclusion is,

1st, A seal of wax, wafer, or other tenacious substance, affixed immediately after the name of the party, though there be no preceding words or expression of intention to create a deed, constitutes a deed.

2d, That without such preceding words, a scroll annexed to the signature with the word "seal," or the letters "L. S." written in the scroll makes a deed, and that the scroll with such preceding words or expressions constitutes a deed. We all, however, think that the variance is not shewn by the Record in this case ; and it does not appear but that the instrument described in the declaration was a writing obligatory as defined by the opinion of the majority, and for this reason, that the Circuit Court erred in sustaining the demurrer.

Judges *Ellis* and *Gayle* concurred with the Chief Justice. Judge *Minor*, as to the character of the instrument, concurred with Judge *Crenshaw*. Judge *Saffold* having presiding in the Circuit Court, gave no opinion.

Judgment of the Circuit Court reversed, and judgment rendered here against the appellee for the amount of the debt and interest.